UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WILDERNESS WATCH, | Case No. 23-CV-284 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS |
| TOM HALL, Forest Supervisor of the Superior National Forest, and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, | |
| Defendants. | |

Wilderness Watch sued the Supervisor of Superior National Forest and the United States Forest Service (together, the "Forest Service") over their alleged failure to comply with statutory wilderness-protection mandates relating to commercial towboat operations and other motorboat use on certain lakes in the Boundary Waters Canoe Area Wilderness ("BWCAW"). The Forest Service moves to dismiss the complaint for lack of subject-matter jurisdiction. (ECF No. 38.) For the reasons below, the Court denies the motion.

### BACKGROUND[1]

Motorboats, including commercial towboats, have been used on certain lakes in the BWCAW for over fifty years. (*See generally* ECF No. 1 ("Compl.") ¶ 24; ECF No. 29

---

[1] In its order denying Wilderness Watch's motion for preliminary injunction, the Court provided a history of towboat operations in the BWCAW and related laws governing the

¶ 2.) Outfitters use towboats to bring groups of BWCAW visitors from entry points across certain motorized lakes to portages on the edge of motorized areas, enabling them to disperse further into the BWCAW. (*See* ECF No. 29 ¶ 2; Compl. ¶ 8.)

Wilderness Watch[2] alleges that the Forest Service's allowance of excessive towboat and other motorboat use in the BWCAW violates wilderness-protection mandates of several laws; namely, the Wilderness Act of 1964; the Boundary Waters Canoe Area Wilderness Act of 1978 ("BWCAW Act"); and the National Forest Management Act ("NFMA"). The Wilderness Act designates the Boundary Waters Canoe Area as a wilderness area within the Act's protection, allowing commercial services only "to the extent necessary for activities which are proper for realizing the recreational or other wilderness purposes of the areas." 16 U.S.C. § 1133(d)(5). The BWCAW Act implements a quota system for use of motorboats on the handful of BWCAW lakes on which restricted use is authorized. Pub. L. No. 95–495, § 4(f), 92 Stat. 1649, 1650–51 (Oct. 21, 1978). Under the NFMA, the Department of Agriculture and the Forest Service implement the Boundary Waters Canoe Area Wilderness Management Plan and Implementation Schedule ("Wilderness Plan"), which, among other things, requires towboat operations

---

BWCAW. (ECF No. 46 at 2–11.) The Court recounts only the information relevant to the Forest Service's motion.

[2] Wilderness Watch is a nonprofit conservation organization focused on the preservation and stewardship of lands and rivers in the National Wilderness Preservation System and the National Wild and Scenic Rivers System. (Compl. ¶ 17.)

to be authorized by a special-use permit.[3] (ECF No. 29-1 at 22[4]; *see* Compl. ¶ 40.) The Wilderness Plan caps towboat use at 1992 levels "for numbers of boats, trips, current operators, and specific lakes." (ECF No. 29-1 at 22.)

## I. Towboat Operations in the BWCAW

To accommodate some towboat use, the Forest Service issues special-use permits to outfitters, authorizing them to use commercial towboats in the BWCAW for up to ten years. (Compl. ¶¶ 40, 100, *see* ECF No. 29 ¶ 4.) The Forest Service then reviews annually the outfitters' operating plans and has the discretion to amend their special-use permits to comply with the law. (*See* ECF No. 16-3 §§ I.E, II.A.) A special-use permit limits the number of towboats used, but it does not limit the number of towboat trips, either per towboat or per permit. (*See, e.g., id.* § VII.H.6.) In 2018, the Forest Service imposed a moratorium on special-use permits, including towboats. (ECF No. 41 ¶ 21.) As of May 2023, twenty businesses operate 63 towboats in the BWCAW and all towboat operators are under special-use permit. (*Id.* ¶ 19 & n.2.)

Wilderness Watch alleges that towboat use is exceeding these caps in some areas, leading to wilderness character degradation. (*E.g.*, Compl. ¶¶ 72–73.) The complaint

---

[3] Forest Service management decisions currently must conform with the 2004 Superior National Forest Land and Resource Management Plan ("Forest Plan"). *See* Forest Service U.S. Dept. of Agriculture, *Superior National Forest Plan*, https://www.fs.usda.gov/detail/superior/landmanagement/planning/?cid=fsm91_049716 [https://perma.cc/K8AR-9L3L]. The Forest Plan carried forward the Wilderness Plan without substantive changes.

[4] ECF documents cite ECF page numbers unless otherwise noted.

3

asserts that Forest Service data shows at least 2,550 towboat trips in 2015, and at least 3,865 towboat trips in 2020, allegedly well above the Wilderness Plan's towboat-use limit of 1992 levels.[5] (*Id.* ¶ 72; *see* Compl. ¶ 80 ("The Forest Service represented . . . that the 1992 level for the number of commercial trips was 1,342.").)

## II.     This Litigation

Wilderness Watch brings five causes of action based on the Forest Service's alleged authorization of excessive commercial towboat use and other motorboat use in the BWCAW: a violation of the NFMA and the Wilderness Plan (Count 1); a violation of the BWCAW Act (Count 2); and violations of the Wilderness Act (Counts 3–5).[6] (Compl. ¶¶ 76–110.) These violations were allegedly "arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law, constituting a violation of the APA." (*Id.* ¶ 82 (citing 5 U.S.C. § 706(2)(a)); *id.* ¶ 88 (same); *id.* ¶ 97 (same); *id.* ¶ 105 (same); *id.* ¶ 110 (same).)

---

[5] As noted in the Court's prior order, the record before the Court on towboat-use data is muddled. (ECF No. 46 at 9–11.)

[6] The parties have been here before. In 2015, Wilderness Watch sued the Forest Service in part for authorizing excessive towboat operations and other motorboat use in the BWCAW. *Wilderness Watch, Inc. v. Halter*, 15-CV-03734 (WMW/LIB), ECF No. 1 (D. Minn. Sept. 25, 2015). In that action, the Forest Service did not challenge jurisdiction and produced an administrative record, and the parties settled the matter in 2017. *Id.*, ECF No. 46 (June 22, 2016); *id.*, ECF No. 60 (May 9, 2017). The parties are now back, disputing similar issues.

4

Among other relief, Wilderness Watch seeks to enjoin the Forest Service "from permitting any motorized use beyond the statutory cap and the quotas" in the Wilderness Plan and to "enjoin the Forest Service from authorizing any commercial towboat entries until the agency can demonstrate full compliance" with relevant statutes. (*Id.* ¶ 10; *see id.* ¶ 111.) It also asks the Court to order the Forest Service to "create and implement a permitting process for commercial towboat operations that will ensure clarity, accountability, and compliance with the law." (*Id.* ¶¶ 11, 111(b).)

Wilderness Watch moved for a preliminary injunction based on Counts Four and Five. In response, the Forest Service argued that the Court lacked subject-matter jurisdiction over those two claims. The Court concluded that for the purposes of the injunction motion, it had jurisdiction over the two claims and denied Wilderness Watch's motion on other grounds. (ECF No. 46.) The Forest Service now renews its jurisdictional challenge, moving to dismiss for lack of subject-matter jurisdiction over all claims.

## ANALYSIS

### I.  Legal Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject-matter jurisdiction. *Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023). Jurisdictional questions are generally "for the court to decide at the outset." *Magee v. United States*, 9 F.4th 675, 682 (8th Cir. 2021) (quotation marks and citation omitted). As the party invoking federal jurisdiction, Wilderness Watch bears the

5

burden of proving it. *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 815 (8th Cir. 2006).

An attack on subject-matter jurisdiction may be facial or factual. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). Thus, the Court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Carlsen*, 833 F.3d at 908. (citation omitted).

Wilderness Watch's complaint alleges that the Court has subject-matter jurisdiction because the Forest Service "authorized motorboat use through final agency actions, and/or agency action unlawfully withheld or unreasonably delayed," implicating Sections 706(2) and 706(1) of the Administrative Procedure Act ("APA"). (Compl. ¶ 14 (citing 5 U.S.C. §§ 553–59, 701–06).) The Forest Service asserts a facial challenge to all claims based on a lack of final agency action.[7]

---

[7] The Forest Service also asserts a factual challenge to subject-matter jurisdiction over Counts Four and Five, which allege that the Forest Service has failed to take the required action. *See* 5 U.S.C. § 706(1). Wilderness Watch explains that Section 706(1) was an "alternative" basis for jurisdiction over only Count Four. (ECF No. 47 at 16 (describing failure-to-act as an "alternative way to view Count IV"); *see* ECF No. 27 at 4 (asserting

## II. Facial Challenge

The Forest Service argues that the complaint identifies no final agency action under the APA. The APA requires the Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When a private right of action is not provided by statute, "final agency action" is subject to judicial review. *Id.* § 704. For agency action to be "final," two conditions must be met: "First, the action must mark the 'consummation of the agency's decisionmaking process'"—it "cannot be tentative or interlocutory in nature." *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018) (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quotation marks and citation omitted). A final agency action "must have inflicted 'an actual, concrete injury' upon the party seeking judicial review." *Id.* (citation omitted).

The Forest Service contends that Wilderness Watch's claims do not confer jurisdiction because they are merely a broad "programmatic" challenge to the Forest Service's land management practices. (ECF No. 40 at 25 *(*citing *Lujan v. Nat'l Wildlife*

---

that the Court's jurisdiction over Count Five is based solely on Section 706(2)).) Because, for the reasons below, the Court has jurisdiction over the claims without considering this alternative basis, the Court does not address the factual challenge.

7

*Fed'n*, 497 U.S. 871 (1990).) Among other things, it points to the relief sought by Wilderness Watch, such as "requiring the Forest Service to create and implement a permitting process for commercial towboat operations that will ensure clarity, accountability, and compliance with the law." (Compl. ¶ 11.) According to Wilderness Watch, its claims are based on the Forest Service's issuance of special-use permits for towboat operations in the BWCAW, which constitutes final agency action under the APA, and so the Court has subject-matter jurisdiction. (*See* ECF No. 47 at 3, 5.)

The Court agrees with the Ninth Circuit's analysis on the issue. Confronting the same issue, the Ninth Circuit concluded that the Forest Service's issuance of special-use permits constitutes final agency action conferring jurisdiction under the APA. *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 639 (9th Cir. 2004). In *Blackwell*, the issue was commercial packstock operations in wilderness areas. The Forest Service issued multi-year special-use permits and granted renewals of special-use permits to packstock operators. *Id.* at 637. The plaintiff alleged that the Forest Service violated the Wilderness Act in part by failing to determine that those commercial services were necessary and proper before issuing the permits. *Id.* As here, the Forest Service argued that the plaintiff's action was "an impermissible programmatic challenge to the forest management plan" and "failed to allege any specific challenges to a final agency action." *Id.* at 639. The Ninth Circuit disagreed: "A special-use permit is the legal instrument by which the Forest Service authorizes commercial services, 36 C.F.R. § 251.50. The issuance of a specific

8

special-use permit is a final agency action that has an actual or immediately threatened effect sufficient to trigger standing under *Lujan*." *Id.*; *see* 36 C.F.R. § 251.50 (scope of special use authorization); 5 U.S.C. § 551(8), (13) (defining license and agency action).

The Forest Service acknowledges that the special-use permits constitute final agency action, so long as they were issued within the statute of limitations.[8] (ECF No. 52 at 1.) It distinguishes *Blackwell* on the facts, asserting that the *Blackwell* plaintiffs challenged specific special-use permits,[9] while Wilderness Watch's complaint fails to identify specific permits and instead "mounts a broad-based attack on a general program that has been in place for decades." (*Id.*)

---

[8] The parties dispute whether the Forest Service's annual review of each permit holder's operating plan brings special-use permits issued more than six years ago within the APA's statute of limitations. 28 U.S.C. § 2401(a). The Court need not resolve this issue at this stage because it is undisputed that the Forest Service issued special-use permits to at least two towboat operators within the statute of limitations. (ECF No. 41 ¶ 19 n.2 (attesting that special-use permits had been issued "in the past few months").)

[9] The *Blackwell* opinion does not identify the individual special-use permits at issue, and other opinions related to *Blackwell* only note that the plaintiffs had challenged "certain" permits. *See, e.g.*, *High Sierra Hikers Ass'n v. Powell*, 150 F. Supp. 2d 1023, 1033 (N.D. Cal. 2001) ("Plaintiffs have challenged the calculation of *certain* trailhead limits and the grant of *certain* special use permits." (emphasis added)), *aff'd in part, rev'd in part sub nom. Blackwell*, 390 F.3d 630. In an earlier opinion, the Ninth Circuit explained that the plaintiff "did not challenge the entirety of the wilderness plan, but instead challenged certain agency actions, for example the grant of certain special-use permits, and the calculation of certain trailhead limits. In its complaint, High Sierra challenged the issuance of 'special-use permits' in the Inyo and Sierra National Forests." *High Sierra Hikers Ass'n v. Blackwell,* 381 F.3d 886, 895 (9th Cir. 2004), *opinion amended and superseded on denial of reh'g, Blackwell,* 390 F.3d 630.

True, the complaint does not identify specific special-use permits, and it could have been more artfully worded. Even so, it challenges "towboat use authorizations," (*e.g.*, Compl. ¶ 82), alleging that towboat operators in the BWCAW are "authorized *by a special use permit*" on specific lakes in the BWCAW. (*Id.* ¶ 40 (emphasis added); *see id.* ¶¶ 25, 100.) It is reasonable to infer that the Forest Service's alleged "towboat use authorization" refers to the agency's issuance of special-use permits for towboat operations on the eleven BWCAW lakes identified in the complaint. (*See id.* ¶¶ 25, 28, 30.) A programmatic challenge would contest the Forest Service's management of motorboat operations in the BWCAW as a general matter. That the complaint describes the history of motorboat-operations management in the BWCAW, including the enactment of statutes and adoption of the Wilderness Plan, does not render the entire complaint a programmatic challenge that would divest the Court of subject-matter jurisdiction. The relief sought by Wilderness Watch, while worded broadly, seeks to require the agency to conform its ongoing permitting process to legal requirements.

The Forest Service relies on several cases, none of which persuades the Court that it lacks subject-matter jurisdiction. For example, it argues that Wilderness Watch's claims are not justiciable because the complaint demands "a general judicial review of the [Forest Service's] day-to-day operations" rather than specific special-use permits. *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000) (en banc) (alteration in original) (citing *Lujan*, 497 U.S. at 899). In *Peterson*, the Fifth Circuit held that a challenge to a timber-

management program was not a final agency action. There, the plaintiffs challenged "Forest Service practices throughout the four National Forests in Texas and covering harvesting from the 1970s to timber sales which have not yet occurred." *Id.* at 566. The court lacked jurisdiction over the challenge because "the program of timber management" at issue did not "mark the 'consummation' of the agency's decisionmaking process" or constitute "an identifiable action or event." *Id.* (citing *Bennett*, 520 U.S. at 178; *Lujan*, 497 U.S. at 899). That the pleadings identified particular timber sales as "examples" of the general program of timber management did not confer jurisdiction: "Rather than limit their challenge to individual sales, [the plaintiffs] merely used these sales as evidence to support their sweeping argument that the Forest Service's 'on-the-ground' management of the Texas forests over the last twenty years violates the NFMA." *Id.* at 567.

As this Court noted in its prior order, unlike *Blackwell*, *Peterson* did not address special-use permits. And unlike *Peterson*, Wilderness Watch challenges the Forest Service's issuance of special-use permits for towboat operations on eleven BWCAW lakes, bringing "into focus the nature of the illegality the plaintiffs allege." *Peterson*, 228 F.3d at 571 (Higginbotham, J., concurring). It is not a sweeping challenge to the Forest Service's entire management of motorboats in the BWCAW. Although, as *Lujan* acknowledged, judicial intervention as to a final agency action might result in "a regulation, a series of regulations, or even a whole 'program'" being revised by the

agency. 497 U.S. at 894; *see Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002) ("[M]onitoring and management practices are reviewable when, and to the extent that, they affect the lawfulness of a particular final agency action." (citing *Lujan*, 497 U.S. at 894)). That judicial review of the Forest Service's issuance of special-use permits may one day require revisions to the permitting process does not preclude jurisdiction.

The Forest Service also relies on *Sierra Club v. Robertson*, in which the court held that the plaintiff could not challenge a forest plan that was merely a "general planning tool." 28 F.3d 753, 758 (8th Cir. 1994); *see id.* ("Adoption of the Plan does not effectuate any on-the-ground environmental changes. Nor does it dictate that any particular site-specific action causing environmental injury must occur."). Wilderness Watch does not challenge a *plan* to authorize towboat operations; it challenges the Forest Service's *decisions* to authorize such operations when it issued special-use permits.

In considering a facial challenge to subject-matter jurisdiction, the Court accepts all factual allegations in the complaint as true and views them in the light most favorable to Wilderness Watch. *Hastings*, 516 F.3d at 1058. The complaint could be more artfully pleaded, but the allegations are sufficiently focused on the Forest Service's authorization of towboat operations via special-use permits to confer jurisdiction. The parties do not dispute that special-use permits determine the towboat operators' rights and obligations, and that legal consequences flow from the permits. Nor do they dispute that Forest

Service's authorizing towboat operations allegedly inflicted a concrete injury on Wilderness Watch. The Court thus finds that the complaint alleges final agency action conferring jurisdiction over the claims of excessive towboat operations.[10] *See Blackwell*, 390 F.3d at 639.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Forest Service's motion to dismiss (ECF No. 38) is DENIED.

Dated: February 28, 2024             BY THE COURT:

                                      s/Nancy E. Brasel
                                      Nancy E. Brasel
                                      United States District Judge

---

[10] Wilderness Watch requested jurisdictional discovery. (ECF No. 47 at 37–39.) Because the motion to dismiss is denied, this request is denied as moot.